IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JENNIFER D. ALDEA-TIRADO<br><br>Plaintiff<br><br>v.<br><br>PricewaterhouseCoopers  LLP<br><br>Defendant | Case No.:<br><br><br><br>Title VII: Employment Discrimination<br>      Retaliation<br><br>      Supplemental Jurisdiction<br><br>Jury Trial is Demanded. |

## COMPLAINT

**TO THE HONORABLE COURT:**

NOW COMES **JENNIFER D. ALDEA-TIRADO**, through the undersigned attorney and most  respectfully ALLEGES, SETS FORTH and PRAYS:

### I. NATURE OF THE ACTION AND JURISDICTION

1.     This action is brought pursuant to the Employment Discrimination Act, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000-e *et. seq*., the Pregnancy Discrimination Act of 1978; the Puerto Rico's Working Mother's Act, Law No. 3 of March 13, 1942, 29 L.P.R.A. §§ 467-474; Law No. 100 of June 30, 1959, 29 L.P.R.A. § 146 *et. seq.;* Law 69 of July 6, 1985, 29 L.P.R.A. §§ 1321-1341; Puerto Rico Law on Breastfeeding or Maternal Milk-Extraction Period ("Ley para reglamentar el periodo de lactancia o de extraccion de leche materna"), 29 L.P.R.A. §§ 478-478h and the anti-retaliation provisions set forth in Title VII and Puerto Rico Law 115 of December 20, 1991, 29 L.P.R.A §194 et seq. seeking compensatory, double and liquidated damages, back pay, and equitable and injunctive relief to redress for defendant's discrimination

and retaliation the basis of pregnancy and gender.

2.      This court has jurisdiction to entertain this action pursuant to 28 U.S.C. §§ 1331. Its supplemental jurisdiction is also invoked pursuant to 28 U.S.C. § 1367 (a) to hear the claims under the laws of the Commonwealth of Puerto Rico because these are so related to the other claims as to which this court has original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

3.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b)(1) and (2), as the defendant resides in Puerto Rico and all discriminatory employment practices alleged were committed within the jurisdiction of the Commonwealth of Puerto Rico.

4.      A timely charge of employment discrimination on the basis of gender and pregnancy was filed with the Equal Employment Opportunity Commission on December 28, 2020. The charge number is EEOC 515-2021-0079. A Right to Sue Notice was issued on August 16, 2021 sometime thereafter.

5.      The instant Complaint and Demand for Jury Trial is filed within ninety (90) days of receipt by Aldea of the EEOC's Notice of Right to Sue.

6.      Aldea requests that all causes of action be tried before a jury.

## II.      THE PARTIES

7.      Aldea is of legal age, a citizen of the United States and a resident of Puerto Rico.

8.      Aldea is an "employee" within the meaning Title VII, Civil Rights Act of 1964 as amended, of the Pregnancy Discrimination Act and within the meaning of all the legal provisions of the laws of Puerto Rico upon which she predicates her claims for relief.

9.      The defendant, PricewaterhouseCoopers LLP, (hereinafter referred to as "PwC") is and continued to be a corporation duly authorized to conduct business under the laws of the

Commonwealth of Puerto Rico.

10.     At all times relevant, PwC is a "person" and Aldea's "employer" within the meaning of 42 U.S.C. §2000e(a) and (b) and (k) and within the meaning of all the legal provisions of the laws of Puerto Rico upon which Aldea predicates her claims.

11.     PwC employs more than 500 employees on a monthly basis.

12.     PwC is engaged in an "industry affecting commerce" within the meaning of 29 U.S.C. § 630(h).

## III. RELEVANT FACTS

### - Aldea's Academic and Professional Background –

13.     In May 2012, Aldea graduated *Cum Laude* from the University of Puerto Rico where she obtained a B.A. in Business Administration with a major in accounting. Ms. Aldea's G.P.A. in her area of concentration was 3.9.

14.     Aldea worked twice for PwC as an intern: February to May 2012 and February to September 2013.

15.     By the end of May 2013, Aldea had took the oath as a licensed Certified Public Accountant.

16.     In October 2013, PwC extended and Aldea accepted an offer of full-time employment as associate accountant.

17.     From 2014 to 2018, while working full-time for PwC, Aldea attended the Law School of the University of Puerto Rico as part of the evening program.

18.     Aldea succeeded in obtaining her Juris Doctor and graduated *Magna Cum Laude* with a 3.79 G.P.A.

19.     Aldea passed the Puerto Rico Bar examinations and was admitted to practice the legal profession in February 2019.

**- PwC's Organizational Structure and Aldea's Job Responsibilities -**

20.     At all times relevant to this Complaint, Aldea had promoted to the position of Senior Associate.

21.     Aldea works as a member of the Tax-International Assignment Services group – now Global Mobility Services - from PwC's office located in San Juan, Puerto Rico. Up to April 2020, Jose Osorio was the Director and Michelle Luciano was the manager of the San Juan Office.

22.     Throughout eight (8) consecutive years, PwC considered that Aldea's work performance exceeded its expectations. PwC performance evaluation system measures the quality of Aldea's work in five (5) areas: "Whole Leadership", "Business Acumen", "Technical and Digital", "Global and Inclusive", and "Relationships."

23.     Each of the above-mentioned five (5) work areas are graded within five grades of progression of performance levels: "Not at level", "Partially at level", "At level", "Partial at Next [level]", and "At Next [level]."

24.     According to PwC's Progression Snapshot for fiscal year 2020, Aldea's performance from May 2019 to April 2020, was rated at the highest "demonstrated at next level" in three of the five work areas [whole leadership, Technical and Digital, Relationships], and as next to highest "Partially demonstrated at Next Level" in the remaining two [Business acumen, Global and inclusive].

25.     Aldea engaged her excellent work performance in serving high tiered corporate clients entrusted to her by PwC such as *Airbus, Lilly, Pfizer, Citigroup, Lutron Electronics, Raytheon, Rockwell Automation, Naturgy Energy Group, Beckton, Dickinson and Company, AT&T Corporation, Abbott Laboratories,* among others. The assignment of important corporate clients in the United States meant a significant development and advancement in Aldea's career and a

tacit recognition by PwC of Aldea's qualifications, skills and trustworthiness.

26.     After having been subjected to extensive medical treatments and surgeries, on or about November 2019, Aldea learned that she was pregnant.

27.     PwC management knew about Aldea's multiple efforts to become pregnant as she notified her employer about the medical conditions and difficulties she confronted in her desire to become a mother.

28.     Aldea's pregnancy was deemed "high risk" and she notified PwC about this news.

29.     Throughout the pregnancy, Aldea suffered serious medical complications that demanded her to take medical leave of absences and, as per medical orders, reduce work hours to a maximum of 40 hour per week.

30.     Aldea kept PwC duly informed about the development of her pregnancy-related conditions by timely submitting supporting medical documentation to PwC's Human Resources officer and to PwC's National Leave Center.

### - Portent of Discrimination -
### Upcoming Maternity Leave, Ordered Work Adjustments
### and Unfounded Negative Performance Evaluation

31.     In April 2020, Jose Osorio left PwC and Linda Soriano, Managing Director of PwC's Miami Office, became the Director and responsible for the oversight of PwC's operations in Puerto Rico. Michelle Luciano remained as Manager of PwC's San Juan Office.

32.     On May 2, 2020, Linda Soriano informed Aldea about her decision to adjust Aldea's work time distribution amongst the various corporate clients. The work allocation adjustment was to be reevaluated after July 15, 2020. According to Soriano, the work allocation adjustment was necessary "to ensure [PwC had] the extra help needed with the 2019 PR filing season."

33.     On May 4, 2020, Aldea responded to Soriano's May 2nd communication. Aldea expressed her concern about the work allocation adjustment ordered by Soriano as she understood it would

adversely affect the work she had been performing for an important client during the previous ten (10) months: Airbus at PwC's office located at Tysons, Virginia.

34.     Aldea further communicated to Soriano that the work allocation adjustment further represented a challenge for her due to, among others, that her work time was already intensely compromised and committed because PwC had designated her to substitute the manager on maternity leave until the end of June 2020 and had continued to be responsible for the complex endeavors related to the needs of the particular clients assigned to her. Aldea expressly underscored her concern that the work allocation adjustment risked not being able to meet client's expectations.

35.     Aldea further submitted PwC with several recommendations that would successfully attend to both the employer's needs and her clients'. However, PwC never responded to Aldea's May 4th communication.

36.     In the morning of June 15, 2020, Aldea presented PwC's management with a written notice about the status of her high-risk pregnancy and the medical order to rest for two weeks; that is, until June 28, 2020. She submitted the medical supporting documentation to PwC's National Leave Center.

37.     Before noon, PwC Director, Fabrice Gualino, responded to Aldea's morning communication stating, among others, "Sorry you have been pulled in so many directions in the past few weeks between PR work and Airbus this was stressful and I am sure this did not help your pregnancy…Try to relax a little bit and hopefully everything will go well for the baby! It is much more important that the Airbus work…We will handle it. Don't worry."

38.     At 4:02 p.m. on July 15, 2020, Aldea wrote to Kelly Jackson, PwC's Human Resources Officer and complied with her duty to notify her employer about the dates within which she would not be present at work because of maternity leave. Aldea asked Jackson for her availability to hold

a meeting to discuss Aldea's maternity leave given that the estimated date of delivery was August 28, 2020.  Neither Kelly Jackson nor any other member of PwC's management responded to Aldea's communication.

39.     The next day, July 16, 2020 and for the first time in her eight-years of long and successful employment, PwC's management informed Aldea that her performance from May 2019 through April 2020 had allegedly not met "expectations of the firm nor within [Aldea's] role in IAS." PwC proceeded to issue a Performance Improvement Plan ["PIP"].

40.     In the PIP, PwC vaguely identified as "Areas of Performance Concern" the following: "Whole Leadership", "Business Acumen", "Relationships." PwC's vague and unfounded explanations were mostly expressed by Soriano who stated that "[Aldea] did not contribute enough during the year," "that the San Juan office needed [Aldea] more," "that the Argentina team felt that [Aldea] did not provide guidance." Soriano did not identify who, when or why these alleged perceptions were held.

41.     From May 2019 to April 2020, PwC never questioned Aldea's work performance, or indicated that she was nor meeting the employer's expectations or that she was in any way failing to comply with her role in IAS. To the contrary, PwC's performance evaluation for the same period of time reflected that Aldea's work performance was at the top of the employer's expectations. Please refer to Allegation 24 above.

42.     On July 20, 2020, Aldea submitted her written opposition to PwC's decision to under-rate her professional performance by placing her under a PIP and denounced PwC's decision as illegal discrimination based on her pregnancy. Aldea submitted this communication to Laura Fox (Tax Human Capital Director), Robert Burke (Tax Partner), Kelly Jackson (Human Resources Manager), Linda Soriano (Managing Director) and Michelle Luciano (Tax Manager).

43.     In her opposition, Aldea expressed, among others, that PwC's discriminatory and unfounded decision to place her under a PIP thwarted her opportunities for future employment growth, development and advancement within the Firm.

44.     Neither Soriano nor Jackson responded to Aldea's July 20th communication. Laura Fox and Robert Burke did not respond either. Michelle Luciano, Aldea's supervisor in Puerto Rico, communicated to PwC management that she disagreed with its evaluation of Aldea's work performance and its decision to place her under a PIP. PwC, however, disregarded Aldea's supervisor's knowing opinion and iterated its decision to leave the PIP in place.

45.     Shortly thereafter, on July 27, 2020, Aldea notified PwC that she was ordered to rest for two weeks by her attending physician due to further complications with her pregnancy. Because the time period for the medically ordered medical rest overlapped with the commencement of Aldea's maternity leave, Aldea notified that she was not to return to the workplace before her maternity leave period.

46.     Aldea submitted medical documentation to PwC management and to the Reed Group that attested to the truth of her claim.

47.     On July 28, 2020, PwC's Human Resources manager, Kelly Jackson responded to Aldea's July 20th email stating that she [Jackson] had been on vacation; that she was "happy to talk about [Aldea's] concerns [but that she] didn't expect [Aldea] to do anything work related while on medical leave…"

48.     On August 3, 2020, Aldea wrote to Jackson asking again, to have a meeting with her "during the next days." Aldea further explained to Jackson that "this situation [the unjustified and discriminatory PIP] [was] affecting [Aldea] emotionally and would like to find a resolution before [her] delivery date."

49.     Jackson responded to Aldea stating that ". [Jackson] had "some big deadlines [that] week",
she would "look at [her] calendar and get back to [Aldea] with some meeting times." As per
Jackson's stated availability, they held a telephone meeting on August 26; that is, two days before
Aldea's delivery date. On that day, Jackson informed Aldea that the evaluation was unappealable.
She identified for Aldea PwC members of management that participated in her evaluation process,
none of which work in Puerto Rico or have personal insight on Aldea's work.  Jackson dodged
every question posed by Aldea requesting information that would assist her identifying what flaws,
errors, omissions or mistakes, if any, she had committed to justify the PIP. Jackson did not answer.

### -A Prelude to Retaliation: EEO Complaint and Aldea's Return to Work

50.     Aldea's baby was born on September 1, 2020.

51.     The period of Aldea's Maternity Leave was scheduled to conclude on December 23, 2020.
However, Aldea returned to work on March 1, 2021 after she exhausted her accumulated vacation
leave.

52.     On December 28, 2020, Aldea presented her formal discrimination complaint against PwC
with the Equal Employment Opportunity Commission [EEOC Charge No.: 515-2021-00079].

53.     Upon her return to work, Aldea discussed with Jackson whether PwC would grant her leave
to participate in a Flexible Work Arrangement as she had during the four years that she attended
law school.

54.     During her law studies, PwC Flexible Work Arrangement ["FWA"] allowed Aldea to
continue her studies while working 80% of the work time.

55.     While on FWA at that time, Aldea continued being responsible for each and every essential
function and duty ascribed to her job position.

56.     The evaluations of Aldea's work performance while on FWA showed that PwC recognized

that she had the ability and skills to adequately manage her time and achieve results, even within the time constraints that a FWA represented.

57.     While on FWA, Aldea was promoted to the position of Senior Tax Associate.

58.     PwC's accepted Aldea's request for Flex Work Arrangement after her return from maternity leave, however, changed the terms and conditions of her employment to such a significant extent that resulted in a *de facto* or constructive demotion.

59.     Upon her return from maternity leave and after she presented her EEO Complaint against PwC, the employer created and continues to maintain a discriminatory work environment and employment conditions.

60.     Upon Aldea's return form maternity leave and after she presented the Complaint before EEOC, PwC divested Aldea from the most significant and essential duties ascribed to her position as Senior Tax Associate. Before Aldea returned from Maternity Leave and before she submitted the EEOC Complaint against PwC, as Senior Tax Associate she was responsible for the full management responsibilities of clients' finances, accounts and compliance with minimal involvement from members of higher management, which included accounts of clients in Puerto Rico, United States, India, Argentina, among others.

61.     Aldea's responsibilities provided her with an increased level of visibility, accountability and opportunity for career progression. Her essential duties were akin to those classified within the Acting Manager position.

62.     Upon Aldea's return from Maternity Leave and after she submitted the EEOC Complaint against PwC, the employer divested Aldea from any direct responsibility with any of PwC's clients and reduced Aldea's work to the review of tax returns and provide tax guidance to other PwC employees. Aldea was no longer responsible for clients' finances, accounts management or

counseling and guidance.

63.     Because PwC divested Aldea from direct work with clients, she is no longer invited to participated in meetings with her clients or with managers of PwC's office in the United States. The accounts originally managed by Aldea were assigned to a less experienced employee that had been trained by Aldea herself.

64.     Currently, another female employee is also on FWA, but PwC did not modify the essential duties of her position. This employee, however, has not opposed to or participated in any procedure to denounce the employer's discriminatory practices under Title VII or any other anti-retaliation under federal or Puerto Rico legislations.

65.     PwC's decision to divest Aldea from the essential duties of her job position has further derailed her opportunities for further career growth, development and advancement within defendant's employ.

66.     PwC further discriminated and retaliated and continues to discriminate and retaliate against Aldea for opposing to and participating in administrative process that investigate PwC's discriminatory practices by penalizing her for taking the legally protected time to extract her maternal milk while at work.

67.     In violation of the unequivocal and express protected rights of a breastfeeding working woman PwC classifies as "idle" or "lost time" the time Aldea devoted to extract her maternal milk while at work.

68.     PwC's decision to further penalize, discriminate and retaliate against Aldea for exercising her rights as a working mother by classifying as "idle" or "lost time" the "breastfeeding period" directly impacts Aldea's performance evaluation. In her performance evaluation, PwC measures the amount of time she allocates as "client hours." PwC utilizes these "Utilization metrics" to

11

determine the amount of "client hours" devoted by Aldea during the evaluation period. By classifying as "idle" or "lost time" Aldea's breastfeeding period, PwC directly and negatively impacts Aldea's "utilization metrics" by significantly lowering the percentage of "client hours" required by PwC. To meet PwC's "Utilization metrics" Aldea is forced to work extra hours to substitute for her breastfeeding period.

69.     The unjustified and baseless PIP imposed upon Aldea shortly before the birth of her child and the commencement of her maternity leave resulted from the employer's intention to penalize Aldea for her absences from work due to maternity-related health conditions and to provoke her resignation.

70.     Upon Aldea's return to work after she exhausted her maternity and vacation leaves, she encountered a work environment that further discriminated and penalized her for maternity and for having denounced the employer's discriminatory actions before the EEOC.

71.     Given PwC's continuous discriminatory and retaliatory work environment, Aldea recognized that the mental and emotional health and stability that she needed to adequately perform her work duties while raising her infant son was being threatened. For that reason, she requested PwC to reduce by 40% her work hours as a prophylactic measure to mitigate the emotional damages already being suffered by her.

72.     As a direct result of PwC's discriminatory and retaliatory actions, the 40% reduction in work hours impacted a proportional decrease in Aldea's salary. Aldea's salary was reduced from $87,400 to $52,440; that is, from a monthly salary of $7,283.33 to $4,370.00.

73.     As a direct result from PwC's discriminatory and retaliatory actions, Aldea has suffered and continues to suffer anxiety, humiliation, loss of interest and motivation, fear of her professional future, anger, sense of devaluation, abuse and mistreatment, among others.

74.     Defendant is liable to Aldea-Tirado pursuant to the anti-discrimination and ant-retaliation provisions guaranteed under the Equal Employment Discrimination Act, Title VII of the Civil Rights Act of 1964, as amended, 28 U.S.C. § 2000 *et. seq*., and the Pregnancy Discrimination Act of 1978, 28 U.S.C. §2000e(k).

75.     Defendant is liable to Aldea-Tirado pursuant to Puerto Rico legislative body of laws that forbid employment discrimination based on gender, sex and pregnancy:  Puerto Rico's Working Mother's Act, Law No. 3, of March 13, 1942, 29 L.P.R.A. §§ 467-474; Law No. 100 of June 30, 1959, 29 L.P.R.A. § 146 *et. seq.;* Law 69 of July 6, 1985, 29 L.P.R.A. §§ 1321-1341; and Law No. 427 of December 16, 2020 as amended, 29 L.P.R.A. § 478, et. seq.

76.     Defendant is liable to Aldea-Tirado pursuant Title VII's and Puerto Rico's anti-retaliation provisions, Law No. 115, 29 L.P.R.A. § 194(a).

## IV. **CAUSES OF ACTION**

### FIRST CAUSE OF ACTION

77.     Plaintiff hereby incorporates by reference each and every allegation asserted in paragraphs 1 to 76 of the Complaint.

78.     Defendant is liable for gender discrimination in the employment pursuant to Title VII of the Civil Rights Act.

79.     Defendant is liable for compensatory and punitive damages in an amount of no less than $300,000.

80.     Defendant is liable for back pay.

### SECOND CAUSE OF ACTION

81.     Plaintiff hereby incorporates by reference each and every allegation asserted in paragraphs 1 to 80 of the Complaint.

82.   Defendant is liable for discrimination based on pregnancy pursuant to the Pregnancy Discrimination Act, 1978 amendment to Title VII of the Civil Rights Act of 1964.

83.   Defendant is liable for compensatory and punitive damages in an amount of no less than $300,000.

84.   Defendant is liable for back pay.

THIRD CAUSE OF ACTION

85.   Plaintiff hereby incorporates by reference each and every allegation asserted in paragraphs 1 to 84 of the Complaint.

86.   Defendant is liable for retaliation pursuant to Title VII of the Civil Rights Act.

87.   Defendant is liable for compensatory and punitive damages in an amount of no less than $300,000.

88.   Defendant is liable for back pay.

FOURTH CAUSE OF ACTION<br>**Supplemental Claims**

89.   Plaintiff hereby incorporates by reference each and every allegation asserted in paragraphs 1 to 88 of the Complaint.

90.   Defendant is liable for discrimination based on gender under Puerto Rico's Laws 100 and 69.

91.   Defendant is liable to compensate Plaintiff Aldea with an amount of no less than the double compensatory damages awarded by the jury.

FIFTH CAUSE OF ACTION<br>**Supplemental Claims**

92.   Plaintiff hereby incorporates by reference each and every allegation asserted in paragraphs 1 to 91 of the Complaint.

93.     Defendant is liable for discrimination based on pregnancy pursuant to Puerto Rico's Laws 3 and 100.

94.     Defendant is liable to compensate Plaintiff Aldea with an amount of no less than the double compensatory damages awarded by the jury.

SIXTH CAUSE OF ACTION
**Supplemental Claims**

95.     Plaintiff hereby incorporates by reference each and every allegation asserted in paragraphs 1 to 94 of the Complaint.

96.     Defendant is liable to Aldea pursuant to the anti-retaliation provisions set forth in Puerto Rico Law 115 of December 20, 1991, 29 L.P.R.A §194 et seq.

97.     Defendant is liable to compensate Plaintiff Aldea with an amount of no less than the double compensatory damages awarded by the jury.

SEVENTH CAUSE OF ACTION
**Supplemental Claims**

98.     Plaintiff hereby incorporates by reference each and every allegation asserted in paragraphs 1 to 97 of the Complaint.

99.     Defendant violated the clear terms and condition of Puerto Rico Law Rico Law on Breastfeeding or Maternal Milk-Extraction Period ("Ley para reglamentar el periodo de lactancia o de extraccion de leche materna"), 29 L.P.R.A. §§ 478-478h.

100.    Defendant is liable to Aldea pursuant to the above stated legislation and responsible for the payment of three times Aldea's salary for every day PwC penalized her for extracting her maternal milk while at the workplace; a specific amount to be determined throughout the litigation of the case

**<u>RELIEF</u>**

**WHEREFORE,** JENNIFER D. ALDEA-TIRADO prays that this court issue orders:

1.      Determine that PricewaterhouseCoopers LLC engaged in illegal gender and pregnancy discrimination in violation of the Civil Rights Act of 1964, as amended, and other applicable laws and regulations that prohibit employment discrimination;

2.      Determine that PricewaterhouseCoopers LLC engaged in illegal constructive demotion in violation of the Civil Rights Act of 1964, as amended;

3.      Provide compensatory and punitive damages to Jennifer M. Aldea-Tirado in an amount of no less of $300,000.00 pursuant to federal law;

4.      Award back-pay in an amount to be determined during the litigation of this case;

5.      Determine that the Defendant engaged in illegal discrimination based on gender and pregnancy under the laws of Puerto Rico and Order defendant to pay compensatory damages to Jennifer M. Aldea-Tirado in an amount that doubles the compensatory damages awarded by the jury;

6.      Determine that defendant engaged in illegal retaliation under the laws of Puerto Rico and Order defendant to pay compensatory damages to Jennifer M. Aldea-Tirado in an amount that doubles the compensatory damages awarded by the jury.

7.      Determine that the Defendant violated the clear terms and condition of Puerto Rico Law Rico Law on Breastfeeding or Maternal Milk-Extraction Period ("Ley para reglamentar el periodo de lactancia o de extraccion de leche materna"), 29 L.P.R.A. §§ 478-478h and Order the Defendant to pay Aldea $3,000 for each day it has and continues to violated this legislation;

8.      Award Jennifer D. Aldea-Tirado the cost of this litigation and attorneys' fees;

9.      Award Jennifer D. Aldea-Tirado pre-judgment interest;

10.     Grant Jennifer D. Aldea-Tirado such other and further relief as the Court may deem

just and proper.

**A jury trial is hereby requested.**

**Respectfully Submitted.**

**In San Juan, Puerto Rico, this 2nd day of November, 2021.**

*S/Maricarmen Almodóvar-Díaz*
**MARICARMEN ALMODÓVAR DÍAZ**
U.S.D.C.P.R. No.: 204406
P.O. Box 363871
San Juan, P.R. 00936-3871
Email: malmodovarlaw@gmail.com
Tel. 787-233-3306